**Eva SUNDARI; Peter Santoso, Petitioners,**

v.

**John ASHCROFT, Attorney General of the United States; Bureau of Citizenship and Immigration Services, Respondents.**

**No. 03–4324.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Nov. 29, 2004.

Decided Nov. 30, 2004.

James M. Tyler, Schubert, Bellwoar, Cahill & Quinn, Philadelphia, PA, for Petitioners.

Before RENDELL, ALDISERT and MAGILL,* Circuit Judges.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

Appellants Eva Sundari and Peter Santoso, married natives of Indonesia, petition for review of a decision by the Board of Immigration Appeals ("BIA") denying their application for political asylum, and claims for withholding of removal and protection under the Convention Against Torture ("CAT").[1] In so ruling, the BIA summarily affirmed the findings of the Immigration Judge ("IJ") that Sundari's untimely asylum application was not justified because she had failed to show "exceptional circumstances" or "changed country conditions," and that she failed to establish that it was more likely than not that she would be subjected to torture or persecution upon return to Indonesia.[2]

Where the BIA issues a summary affirmance, we essentially review the IJ's decision as if it were the decision of the BIA. *See Dia v. Ashcroft*, 353 F.3d 228, 247 (3d Cir.2003) (en banc). Our review is limited to ensuring that any findings are supported by substantial evidence. *See id.*

---

\* Honorable Frank J. Magill, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

1. Peter Santoso claims he is properly designated an Appellant along with his wife because, although he did not file his own application for asylum, he was a derivative for asylum on Sundari's application to the Immigration Court. The Immigration Judge considering Sundari's application determined Santoso could not derive withholding of removal from his spouse's application.

2. Though persuaded Sundari's testimony regarding her claims for withholding of removal and under the Convention Against Torture was not credible, the BIA did not affirm the IJ's finding that her application was frivolous.

We may reverse the BIA's decision only if "any reasonable adjudicator [would] be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Furthermore, "[w]e will not disturb the IJ's credibility determination and findings of fact if they are 'supported by reasonable, substantial and probative evidence on the record considered as a whole.'" *Tarrawally v. Ashcroft*, 338 F.3d 180, 184 (3d Cir.2003) (quoting *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir.1998)). We have jurisdiction under 8 U.S.C. § 1252. For the reasons that follow, we will deny the petition for review.

Sundari is a Pentecostal Christian native to Indonesia who believes herself to be ethnic Chinese. She and her husband entered the United States on visitor visas on July 18, 1999 and December 16, 1998, respectively. Following an instructional presentation by an immigration attorney at her church, Sundari filed an application for political asylum on March 12, 2001— more than a year after her arrival in the United States. Because both Sundari and Santoso remained in the United States following the expiration of their visas they were placed in removal proceedings in April, 2001. On May 17, 2001, Appellant and her husband appeared in Immigration Court in Philadelphia where they conceded removability. Sundari subsequently asserted claims for asylum, withholding of removal, and protection under the Convention Against Torture, and her individual hearing took place on February 25, 2002.

The Attorney General may grant asylum to any alien who is unable or unwilling to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The burden to prove a well-founded fear of persecution lies with the applicant, who must establish a genu-ine fear of persecution and demonstrate that a reasonable person in the same circumstances would similarly fear persecution. The applicant's own testimony may be sufficient to establish eligibility for asylum, as long as the testimony is credible. *See* 8 C.F.R. § 208.13(a).

■ Sundari concedes that she failed to file her asylum application within one year of her arrival in the United States as required under 8 U.S.C. § 1158(a)(2)(B), but argues that the IJ erred in pretermitting her application because she demonstrated "exceptional circumstances" or "changed country conditions" which excuse her untimely filing, *see* 8 U.S.C. § 1158(a)(2)(D). Specifically, Sundari argues that the situation in Indonesia grew better after her arrival in the United States, but then became markedly worse in the last months of 2000 and into the early months of 2001, such that her March 2001 filing was justified. Sundari also claims that until she attended a presentation at her church regarding asylum, she was unaware such a form of relief existed.

The government responds, and we agree, that this Court lacks jurisdiction to review the IJ's determination regarding the tolling of the one-year time bar for filing. The language of 8 U.S.C. § 1158(a)(3) divests courts of the power to review the Attorney General's decision regarding the timeliness of an asylum application, or whether the extraordinary circumstance exception is applicable. *See Tarrawally*, 338 F.3d at 185 (joining several other courts of appeals in holding that "the language of 8 U.S.C. § 1158(a)(3) clearly deprives us of jurisdiction to review an IJ's determination that an asylum petition was not filed within the one year limitations period, and that such period was not tolled by extraordinary circumstances"). We also agree with the IJ that, even if we did have jurisdiction to review

Sundari's claims, she did not establish entitlement to a statutory exception based on either "exceptional circumstances" or "changed country conditions."

■ With respect to her withholding of removal and CAT claims, Sundari bore the burden of establishing that it was more likely than not that, upon return to Indonesia, her life or freedom would be threatened, 8 U.S.C. § 1231(b)(3)(A) (withholding of removal), and she would be tortured at the instigation or with the consent of a public official, 8 C.F.R § 208.18(a)(1)(CAT) based on, *inter alia,* her Christian beliefs or Chinese ethnicity.[3] She testified before the IJ, through a translator, that: 1) for a period of five weeks during the summer of 1998, she had been afraid to attend church because of riots; 2) on June 6, 1998, several Indonesian Muslims from a mosque near her home had once entered her residence, tied up her husband (but did not beat him) and attempted to sexually assault her, but she managed to fight off at least six attackers and expel them from her home by threatening them with a kitchen knife; and 3) the evening following the attack on her and Santoso, Muslims returned and burned down their residence, burning Sundari and Santoso in the process and forcing her family to relocate and settle with relatives approximately fifteen minutes away.

The IJ was troubled by, and found Sundari lacked credibility based on, discrepancies between her asylum application and her hearing testimony. As noted in the oral decision and order of the IJ, Sundari's testimony regarding each of the three events described above was inconsistent on several fronts with the affidavit she initially submitted in support of asylum and which also recounted these events. For example, with respect to the June 6 attack

and attempted assault, Sundari's affidavit states that her husband was not only tied up but badly beaten, and that she was stripped naked by the assailants, some of whom were removing their slacks to undertake sexual assault.

In *Zubeda v. Ashcroft,* 333 F.3d 463, 476–77 (3d Cir.2003), we observed that an IJ should be cautious before placing too much weight on a discrepancy between an asylum application and subsequent testimony. Caution is required in light of the numerous factors that might make it difficult for an alien to articulate her circumstances, including language difficulties. Even so, Sundari's testimony is at odds with her prior statements contained in the asylum application. Though it is not clear, as the IJ found, that she was "making this testimony up as she [went] along," (IJ Order at 13–14) it is clear that her testimony did not establish she or her husband were more likely than not to suffer torture or political persecution on return to Indonesia. Assuming the worst of the June 6 attack against Sundari, she did not offer credible evidence that the attacks were motivated by racial or religious hatred. Sundari resided in a neighborhood with an approximately even mix of Indonesian and Chinese families; she testified the men who burned down her home likely knew it was the home of a Chinese family because of its caliber. Most significantly, Sundari testified that her three children live with their aunt and uncle in Indonesia, attend school there, and have never suffered any problems based on their religion or apparent Chinese ethnicity.

Given Sundari's failure to adequately explain inconsistencies in her testimony and asylum application, and failure to offer additional evidence concerning the likelihood of future persecution in Indonesia, we con-

3. Appellant testified that, to her knowledge, all of her relatives had been born in Indone-

sia, but that she looked Chinese and therefore assumed she was.

clude that the IJ's findings were based on substantial evidence.

For the reasons stated above, we will DENY the petition for review of the IJ's decision.